FILED
at ___ o'clock & ___ min. ___ M

OCT 27 2009

United States Bankruptcy Court
Columbia, South Carolina (19)

ENTERED

OCT 2 7 2009

KPD

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 09-03846-JW |
| | Chapter 13 |
| Harold E. Brown and Gertrude E. Brown, | **ORDER** |
| Debtor(s). | |

This matter comes before the Court for a hearing to consider the confirmation of Harold E. Brown and Gertrude E. Brown's (collectively "Debtors") Chapter 13 Plan ("Plan"). Regions Bank ("Regions") objects to confirmation on the grounds that the hanging paragraph of 11 U.S.C. § 1325(a) ("§1325(a)(*)") prevents bifurcation of its claim secured by a 2007 Toyota Camry. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334, and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L), and (O). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law.[1]

## FINDINGS OF FACT

1. Pursuant to a retail installment sale contract ("Contract") entered into on April 21, 2007, Regions financed Mr. Brown's purchase of a 2007 Toyota Camry ("Camry") and acquired a purchase money security interest in the Camry to secure the financing. In the Contract, the "personal, family or household" box, as opposed to the business or agricultural use boxes, was checked to indicate the primary use for which the vehicle was purchased. Mrs. Brown was not a party to the Contract.

2. Debtors filed a petition under Chapter 13 of the Bankruptcy Code on May 21,

---

[1] To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

2009. Thus, Mr. Brown incurred the debt to Regions under the Contract within 910 days of the petition date.

3. Debtors filed their Plan and schedules on May 21, 2009. The Plan values the Camry at $15,375.00 and proposes to pay that amount to Regions as a secured claim. The Plan proposes to treat any remaining portion of the allowed claim as a general unsecured claim.

4. Regions filed a proof of claim on June 24, 2009, for a secured claim of $21,787.73. Regions attached the Contract and the certificate of title, which lists Mr. Brown as the sole owner of the vehicle and Regions as the lien holder.

5. In its Objection to Confirmation of Plan and Valuation ("Objection"), Regions asserted the plan does not comply with 11 U.S.C. § 1325(a)(5) and (9),[2] the proposed payments do not adequately protect Regions' interest in the Camry, and Debtors' plan does not reflect the true value of the vehicle. No evidence was offered by Regions at the hearing to support a different value; thus, the only issue for determination is whether Debtors properly bifurcated Regions' claim.[3]

## CONCLUSIONS OF LAW

### I. Totality of the Circumstances Test

Debtors bear the burden of proving that their Plan complies with § 1325(a) by a preponderance of the evidence. In re Westerfield, C/A No. 09-01637, slip op. at 3 (Bankr. D.S.C. Jun. 8, 2009); In re Barnes, 378 B.R. 774, 777 (Bankr. D.S.C. 2007).

Debtors do not contest that Regions has a purchase money security interest securing the

---

[2] It appears that Regions' citation to subsection (9) references the hanging paragraph of § 1325. Further references to the Bankruptcy Code will be made by section number only.

[3] Pursuant to the Chambers Guidelines for the submission of joint statements of dispute, parties have the duty to define the issues to be decided by the Court and are bound to the position and disclosures provided therein. The Chambers Guidelines are provided on the Court's website and are designated to have the force and effect of a local rule pursuant to SC LBR 9029-1. In the parties' Joint Statement of Dispute and Stipulation, however, Regions' dispute with respect to valuation was not preserved.

2

Camry, or that the debt was incurred within the 910-day period preceding the date the petition was filed. Regions does not contest that Mr. Brown is the only obligor on the debt or that Mrs. Brown is the only driver of the Camry. Thus, the only inquiry is whether, in the context of these circumstances, the Camry was "acquired for the personal use of the debtor" pursuant to § 1325(a)(*).

Section 1325(a)(*) provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor....

In applying § 1325(a)(*), this Court reviews the totality of the circumstances, finding that a vehicle is acquired for personal use if a debtor's personal use is "significant and material." Westerfield, C/A No. 09-01637, slip op. at 3; In re Matthews, 378 B.R. 481, 489 (Bankr. D.S.C. 2007); see also In re Solis, 356 B.R. 398, 409-11 (Bankr. S.D. Tex. 2006). "Personal use" is determined at the time the debtor purchases the vehicle. Matthews, 378 B.R. at 489 (citing In re Lorenz, 368 B.R. 476, 485 (Bankr. E.D. Va. 2007)).

Additionally, the Court evaluates the following list of non-exclusive factors to determine if the use of a vehicle subject to § 1325(a)(*) is personal: "(1) testimony from the debtor about intended use; (2) the debtor's actual personal use of the vehicle; and (3) any designation of personal use provided by the parties' contract." Westerfield, C/A No. 09-01637, slip op. at 3-4; Matthews, 378 B.R. at 490. While the designation of a vehicle for personal use in a retail installment contract can be persuasive evidence of a debtor's intent to purchase a personal use vehicle, the standard form language in such a contract is not dispositive of a debtor's intent.

3

Westerfield, C/A No. 09-01637, slip op. at 6; Matthews, 378 B.R. at 491-92.

With respect to determining what constitutes personal use, this Court is guided by Fourth Circuit law, which has found that "personal," "family," and "household" are different but overlapping categories, and thus the terms are "neither mutually exclusive nor wholly synonymous" to one another. Matthews, 378 B.R. at 491 (citing Cypher Chiropractic Center v. Runski (In re Runski), 102 F. 3d 744, 747 (4th Cir. 1996)); see also In re Phillips, 362 B.R. 284, 304 (Bankr. E.D. Va. 2007). The Court has considered the use of a vehicle to be personal when it is transportation that "satisfies personal wants (such as recreation), transportation that satisfies personal needs (such as shopping or seeking medical attention or other errands), and transportation that satisfies family and other personal obligations, whether legal or moral." Matthews, 378 B.R. at 489 (quoting Solis, 356 B.R. at 410).

II.     **Application of the Test**

At the hearing on Regions' Objection, the Court received testimony from both Debtors. Both Debtors asserted, and Regions did not dispute, that Mr. Brown purchased the Camry with the sole intent that the vehicle be used by his wife. Both Debtors further testified that Mr. Brown drove the Camry home from the dealership, but had never otherwise used the vehicle. Mrs. Brown uses the Camry to go to the doctor, make shopping trips, and pay bills. It was further undisputed at the hearing that Mr. Brown uses a 2000 Chevy Monte Carlo ("Monte Carlo"), which is titled in both Debtors' names, to drive to work and meet his personal needs.

After reviewing the totality of the circumstances, the Court concludes the Camry was not "acquired for the personal use of the debtor" so as to prevent bifurcation of Regions' claim under § 1325(a)(*). Initially, the Court finds the designation of personal use provided by the Contract is not dispositive of Mr. Brown's intent to purchase the Camry for his personal use in light of

both Debtors' testimony at the hearing, which established that Mr. Brown purchased the vehicle for Mrs. Brown, and Mrs. Brown is the sole driver of the vehicle.

Clearly, the evidence indicates that Mrs. Brown's actual use of the Camry is personal, and that her personal use is significant and material. However, since Mr. Brown is the only obligor on the debt, the focus is on his use of and benefit from the Camry. While Mr. Brown may receive some incidental benefit from Mrs. Brown's use of the Camry, there is no evidence to conclude that this benefit is sufficiently significant and material so as to trigger § 1325(a)(*). Debtors' undisputed testimony established that Mr. Brown never used the Camry, with exception of driving it home from the dealership, and that Mr. Brown used the Monte Carlo exclusively to meet his needs. See In re Adaway, 367 B.R. 571, 576 (Bankr. E.D. Tex. 2007) (finding that a vehicle, which was purchased for use by a non-debtor spouse, was not acquired for the debtor's personal use because the debtor testified without contradiction that his transportation needs were met exclusively by a different car). Although "personal" use may encompass "family" or "household" use to some extent, it appears that under the totality of the circumstances, the Camry was not purchased by Mr. Brown or used by Mrs. Brown to benefit the "family" or "household" in a significant or material way.

Finally, Mrs. Brown's status as a joint debtor does not trigger the applicability of § 1325(a)(*) since Mr. Brown is the only debtor obligated under the Contract. As to this point, the Court departs from the analysis provided in Solis, which relied on § 101(13)[4] and found the term "debtor," for purposes of § 1325(a)(*), "means the person(s) who filed the bankruptcy case, not the person(s) who signed the retail purchase agreement." 356 B.R. at 411. Instead, the Court relies on its case law interpreting § 302, in which the Court has stated that "[w]hile joint

---

[4] Section 101(13) states: "The term 'debtor' means person or municipality concerning which a case under this title has been commenced."

5

administration combines the estates only for administrative matters by using a single docket, it does not merge assets and liabilities" and "creditors of each debtor continue to look to that debtor for payment of their claims." In re Pack, C/A No. 03-05021, slip op. at 1-2 (Bankr. D.S.C. Aug. 29, 2003); see also In re Press, C/A No. 06-10978, slip op., 2006 WL 2734335, at *3 (Bankr. S.D. Fla. Jul. 26, 2006) (rejecting the argument that "debtor" in § 1325(a)(*) should be read as "debtors" pursuant to § 102(7)[5] since the "rights of creditors of the different debtors' estates are not affected by the joint administration" of a husband and wife's petition).

Based on the foregoing analysis, Regions' Objection is overruled, and in accordance with the Chapter 13 Trustee's recommendation, Debtors' May 21, 2009 Plan shall be confirmed by separate order.

**AND IT IS SO ORDERED.**

/s/ John E. Waites
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
October 27, 2009

---

[5] Section 102(7) provides: "In this title . . . the singular includes the plural."